1997 ME 87

**Bethine Ann C. SORDYL, n/k/a Bethine Ann Crookedacre,**

v.

**Eugene SORDYL.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 16, 1997.

Decided April 29, 1997.

Martha J. Harris, Paine, Lynch & Harris, P.A., Bangor, for plaintiff.

William N. Ferm, Ferm, Collier & Larson, Ellsworth, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

WATHEN, Chief Justice.

■ [¶ 1] Defendant, Eugene Sordyl, appeals from the judgment entered in the Superior Court (Hancock County, *Mead, J.*)

affirming the protection from abuse order entered against him in the District Court (Bar Harbor, *Staples, J.*) pursuant to 19 M.R.S.A. § 766 (1981 & Supp.1996). Defendant seeks to challenge an evidentiary ruling made by the District Court in finding "abuse" within the meaning of 19 M.R.S.A. § 762(1)(B) (1981 & Supp.1996).[1] Because the protection order expired by its own terms more than one year ago, we conclude that the appeal should have been dismissed as moot.

[¶ 2] On May, 18, 1995, plaintiff, Bethine Ann Crookedacre, filed a complaint for protection from abuse (PFA) against her husband, the defendant. The complaint was precipitated by events occurring at the couple's Northeast Harbor residence on the evening of May 17. At the PFA hearing, testimony regarding the history of the parties' marriage was admitted over objection.[2] The court concluded that plaintiff was entitled to a protection from abuse order and issued an order that expired on December 29, 1995.

[¶ 3] Defendant appealed to the Superior Court, contending that the events in question did not qualify as "abuse" as defined by the governing statute and that the court erred in considering the history of the marriage. By the time the appeal was heard, the PFA order had expired and plaintiff moved to dismiss the appeal as moot. The Superior Court denied the motion and affirmed the judgment. Defendant now appeals.

[¶ 4] We review only those cases that present a justiciable controversy. *Campaign for Sensible Transp. v. Maine Turnpike Auth.*, 658 A.2d 213, 215 (Me.1995). If issues become moot, an appeal is nonjusticiable. *Id.* "The test for mootness is whether 'sufficient practical effects [flow] from the resolution of [the] litigation to justify the

application of limited judicial resources.' " *Id.* (quoting *State v. Gleason*, 404 A.2d 573, 578 (Me.1979)). "If the issues presented have lost their controversial vitality 'by virtue of legally valid and recognizable supervening circumstances,' we will decline to address them." *Id.* (quoting *Good Will Home Ass'n v. Erwin*, 285 A.2d 374, 379 (Me.1971)). "A dispute loses its controversial vitality when a decision by this court would not provide an appellant any real or effective relief." *Int'l Paper v. United Paperworkers Int'l*, 551 A.2d 1356, 1360–1361 (Me.1988).

[¶ 5] Given that the PFA order at issue here expired over a year ago, no "real or effective relief" would be afforded defendant by a decision in his favor at this time. There are occasions, however, when we will entertain an appeal even though the appeal is technically moot. The exceptions to the mootness doctrine apply when "(1) sufficient collateral consequences will flow from a determination of the questions presented, (2) the question, although moot in the immediate context, is of great public interest and should be addressed for future guidance of the bar and public, or (3) the issue may be repeatedly presented to the trial court, yet escape review at the appellate level because of its fleeting or determinate nature." *Campaign for Transp.*, 658 A.2d at 215 (quoting *Gleason*, 404 A.2d at 578). The Superior Court denied plaintiff's motion to dismiss the appeal on the basis of the first and third of these exceptions.

[¶ 6] Before we will entertain a moot appeal pursuant to the collateral consequences doctrine, the appellant must demonstrate that a decision on the merits of the appeal will have "more than 'conjectural and insubstantial consequences' " in the future. *Nat'l Coun. on Comp. Ins. v. Super. of Ins.*,

---

1. The relevant portion of the statute provides:
   "Abuse" means the occurrence of the following acts between family or household members or by a family or household member upon a minor child of a family or household member:
   . . . .
   **B.** Attempting to place or placing another in fear of bodily injury through any course of conduct including, but not limited to, threatening, harassing or tormenting behavior. . . .
   19 M.R.S.A. § 762(1)(B) (Supp.1996).

2. Plaintiff initially testified to events occurring from 1960–1980, but the court requested that she testify only to incidents within a "reasonable time prior to the current situation." Defendant argued that testimony regarding the history of the marriage was irrelevant to the issue before the court, i.e., the events of May 17. The court considered plaintiff's testimony for a limited purpose—"to better understand what actually occurred on May 17th."

538 A.2d 759, 763–764 (Me.1988) (quoting *Bennett v. State*, 289 A.2d 28, 32 (Me.1972)).[3] Defendant implies in his brief that the finding of abuse could have collateral consequences in later litigation. He does not, however, demonstrate what those consequences might be, nor does he document the existence of any pending litigation that might be impacted by the finding. Thus, defendant has failed to demonstrate that the collateral consequences of the ruling are substantial enough to justify our consideration of a question with no continuing controversial vitality. *Bennett*, 289 A.2d at 32.

■■■■ [¶ 7] We also reject the court's conclusion that application of the mootness doctrine in this case would create a class of cases insulated from appellate scrutiny. Moot issues that "may be repeatedly presented to the Superior Court, yet escape further review by this Court because of their fleeting or determinate nature" may fall within a narrow exception to the mootness doctrine. *Lynch v. Town of Kittery*, 473 A.2d 1277, 1279 (Me.1984); *Nat'l Coun. on Comp. Ins.*, 538 A.2d at 764. In order to qualify, the activity generating the issue, by its very nature, must be so short in duration that the issue will never be fully litigated prior to the cessation or expiration of the action. *Nat'l Coun. on Comp. Ins.*, 538 A.2d at 764 (citing *Conyers v. Reagan*, 765 F.2d 1124, 1128 (D.C.Cir.1985)). In addition, there must be a "reasonable expectation" or "demonstrated probability" that the same controversy will recur involving the same complaining party. *Taxpayers for the Animas–La Plata Referendum v. Animas–La Plata Water Conservancy District*, 739 F.2d 1472, 1479 (10th Cir.1984), *cited with approval in Nat'l Coun. on Comp. Ins.*, 538 A.2d at 764. "The mere theoretical possibility of repetition is not enough." *Nat'l Coun. on Comp. Ins.*, 538 A.2d at 764. The present appeal does not fall within the exception because "[o]nly speculation in the extreme would suggest that the same concatenation of circumstances from which this litigation arose will repeat itself." *Id.*

3. With regard to criminal judgments, legal presumptions may aid the appellant in meeting this burden. *See Sibron v. New York*, 392 U.S. 40, 52–55, 88 S.Ct. 1889, 1897–99, 20 L.Ed.2d 917 (1968) (presuming that collateral consequences result from convictions of crime).

The entry is:

Judgment vacated. Remanded to the Superior Court for the entry of an order dismissing the appeal as moot.

