MAINE SUPREME JUDICIAL COURT                Reporter of Decisions
Decision:     2014 ME 145
Docket:       And-14-7
Argued:       November 5, 2014
Decided:      December 18, 2014

Panel:        SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, JABAR, and HJELM,
              JJ.

CYNTHIA STACEY-SOTIRIOU

v.

EVE A. SOTIRIOU

ALEXANDER, J.

[¶1]  In this appeal we review the careful and thorough work of the District

Court, which fully considered the parties' claims and fulfilled its duty to decide the

issues respecting the best interest of the child.  The court kept its focus on the best

interest of the child despite ill-advised actions of one parent that could have invited

a more summary disposition and less contact between that parent and the child.

[¶2]  Eve A. Sotiriou appeals from a judgment entered in the District Court

(Lewiston, *Lawrence, J.*) finding a substantial change of circumstances and

amending an earlier order governing parental rights and responsibilities to award

primary residence of the child to Cynthia Stacey-Sotiriou while allowing Eve to

have unsupervised visits with the child.  Previously, the court had granted

Cynthia's motion for relief from judgment, pursuant to M.R. Civ. P. 60(b), to

2

vacate a parental rights order that Cynthia had agreed to as a precondition for Eve's return to the country with the child.

[¶3] On appeal, Eve contends that the court erred in granting Cynthia's motion for relief from judgment and Cynthia's motion to modify the judgment, and that the court erred in not finding that Cynthia had committed fraud upon the court by seeking relief from an order that she had agreed to as a precondition for Eve returning to the country with the child. Eve also contends that the court erred and abused its discretion in its determinations of her child support obligation and rights of contact with the child. We affirm.

## I.  CASE HISTORY

[¶4] Cynthia Stacey-Sotiriou and Eve A. Sotiriou are the legal parents of a child born in December 2006. In July 2007, the parties traveled to Vietnam, where Eve adopted the child. The adoption was recognized in Maine in September 2007. On March 4, 2008, after our opinion in *Adoption of M.A.*, 2007 ME 123, ¶¶ 23-31, 930 A.2d 1088, Cynthia and Eve jointly adopted the child in Maine. Cynthia and Eve's relationship ended in late 2008 or early 2009.

[¶5] In April 2009, Eve filed with the Androscoggin County Probate Court a petition seeking annulment of Cynthia's adoption of the child, as well as a motion for relief from the adoption judgment. The Probate Court (*Couturier, J.*) denied the petition and motion, finding that Eve had consented to the adoption. Eve

appealed the Probate Court's decision to us. We affirmed the Probate Court's decision. *In re Adoption of J.S.S.*, 2010 ME 74, 2 A.3d 281.

[¶6] Meanwhile, in May 2009, Eve filed a complaint for a protection from abuse order against Cynthia. *See* 19-A M.R.S. §§ 4005-4007 (2013). The parties agreed to an order without a finding of abuse, which established parental rights and responsibilities and a visitation schedule. After further litigation within the protection from abuse matter, a guardian ad litem (GAL) was appointed. After investigation, the GAL found no evidence of abuse or risk caused by Cynthia except for Eve's allegations.[1] The GAL recommended that the parties have substantially equal time with the child. The agreed-upon order for protection was later dismissed.

[¶7] In August 2009, Cynthia filed a petition for the determination of parental rights and responsibilities pursuant to 19-A M.R.S. § 1653 (2013). After a contested hearing, the court (*Oram, M.*) issued an interim order in January 2010, establishing shared parental rights and responsibilities, with Eve to have primary residence and Cynthia to have the child overnight on alternate weekends and alternate Tuesdays after daycare.

---

[1] In its findings supporting the orders presently on appeal, the District Court found that Eve's allegations that supported the protection from abuse order were not credible.

4

[¶8]  One month after issuance of the interim order, Eve disappeared with the then three-year-old child. A detective from the Androscoggin County Sheriff's Office who was investigating the matter discovered that Eve had quit her job of ten years, sold her cars and horses, and put her house on the market.  On Cynthia's motion, the court issued a new interim order in March 2010 granting Cynthia sole parental rights and responsibilities and primary residence, with supervised visits for Eve.  At that time, the whereabouts of Eve and the child were unknown. Cynthia and law enforcement authorities later learned that Eve and the child lived in Greece for ten months while Cynthia and law enforcement searched for them. [2]

[¶9]  On August 10, 2010, as noted above, we affirmed the Probate Court's decision regarding Eve's attempts to annul Cynthia's adoption of the child.[3] *In re Adoption of J.S.S.*, 2010 ME 74, 2 A.3d 281.  Sometime after we published that opinion, while Eve and the child remained in Greece, an attorney representing Eve contacted Cynthia's attorney to negotiate a final judgment in the parental

---

[2]  As a result of her actions in taking the child to Greece and violating the court's temporary order, Eve was charged with criminal restraint by a parent (Class C), 17-A M.R.S. § 303(1)(A) (2013).  When she returned to Maine, the matter was resolved through a deferred disposition that reduced the charge to a Class D offense.

[3]  Eve later attempted to attack this Court's decision by filing a lawsuit against the State of Maine in the United States District Court (District of Maine) in September 2012, through which she requested that the United States District Court vacate the orders of this Court and the Probate Court.  The matter was dismissed with prejudice.  *See Sotiriou v. Maine*, No. 1:12–cv–00270–JAW, 2012 WL 6679479, at *1 (D. Me. Dec. 21, 2012).

rights matter. At the time, the March 2010 interim order awarding Cynthia sole parental rights governed the parties' parental rights.

[¶10] Eve, through counsel, indicated that she would not return with the child unless Cynthia agreed to an order allowing Eve to have primary residence, with Cynthia to have no more time with the child than stated in the January 2010 interim order. On November 18, 2010, the court (*Carlson, M.*) entered a judgment of parental rights and responsibilities, by agreement of the parties, in which the parties' parental rights and rights of contact were the same as in the January 2010 interim order. On December 18, 2010, Eve returned to the United States with the child.

[¶11] In March 2011, Cynthia filed a motion to modify the November 2010 judgment, alleging a substantial change in circumstances upon the child's return. Later, in August 2011, Cynthia moved for relief from judgment pursuant to M.R. Civ. P. 60(b)(3), alleging that she had agreed to the November 2010 judgment under duress due to Eve's misconduct in absconding with the child and requiring Cynthia to accept the terms of the January 2010 interim order as a precondition for the child returning to the United States.

[¶12] On a motion by Eve, Cynthia's motion to modify was stayed until the court ruled on the Rule 60(b) motion. After a hearing, in an order supported by extensive findings, the court (*Lawrence, J.*) granted Cynthia's motion for relief

6

from the November 2010 judgment but kept the motion to modify on the docket in the interest of finality for the child, anticipating that Eve might appeal from the order granting Rule 60(b) relief. Specifically, the court indicated that the Rule 60(b) relief order would govern parental rights only "until its modification by further interim court order or the entry of a final judgment in this action." The court's order arranged for appointment of a guardian ad litem and initiated other steps to prepare for a full hearing on the motion to modify.

[¶13] Eve filed an appeal from the court's order granting Rule 60(b) relief. On Cynthia's motion, we dismissed Eve's appeal as interlocutory, noting that in the interest of reducing delay and achieving finality for the child the court should "proceed simultaneously" to address the original parental rights action and the motion to modify.

[¶14] After another hearing, the court entered an omnibus order in October 2013. This order made final the judgment on Cynthia's complaint for parental rights and responsibilities and granted Cynthia's motion to modify, finding that there had been a substantial change in circumstances sufficient to warrant modification of the November 2010 judgment. Like the order on the motion for relief from the November 2010 judgment, the omnibus order was supported by extensive findings. The omnibus order also incorporated by reference the findings

from the order on the motion for relief. The omnibus order granted Cynthia primary residence.

[¶15] The omnibus order demonstrated that the court had carefully considered the evidence and arguments of both parties, and in doing so had appropriately kept its focus, not on the past acts of the parents, but on what, going forward, would be in the best interest of the child. The court found "that too much of this litigation has been about the contentiousness of the parties' relationship and that not enough attention has been focused on what would be best for [the child]." Noting that it had responsibility to function as *parens patriae* and act "as a wise, affectionate and careful parent seeking to discern a custody arrangement which furthers the child's best interests, irrespective of the parents' needs or desires" (citing *Ziehm v. Ziehm*, 433 A.2d 727, 728 (Me. 1981)), the court recognized that it had to "make a close examination of the present circumstances and future needs of a minor child, and not just a limited examination of which parent is better suited to accept physical custody."

[¶16] Despite Eve's conduct in violating the January 2010 interim order and absconding with the child, the court awarded Eve unsupervised contact with the child, including overnights with the child on alternate weekends, various holidays, one consecutive week of summer vacation, alternating school vacations, and any other contact "mutually agreed upon by the parties." In doing so, the court

8

recognized the child's need for significant time with Eve. The court also ordered Eve to pay Cynthia $180 per week in child support, basing its calculation of Eve's earning capacity on a finding that Eve was "voluntarily underemployed and [imputing to her] an earning capacity of $62,061.00 per year." Eve then brought this appeal pursuant to 14 M.R.S. § 1901 (2013) and M.R. App. P. 2.

## II. LEGAL ANALYSIS

[¶17] As a preliminary matter, we do not reach the issue of whether the District Court properly granted the M.R. Civ. P. 60(b) motion for relief from judgment. The final judgment in this case, the omnibus order, resolved the underlying parental rights action and addressed Cynthia's motion to modify based on the court's findings, well supported by the record, that there had been a substantial change in circumstances sufficient to warrant modification of the November 2010 order. As the court's decision was a final resolution of the original parental rights action, plus a decision on the motion to modify, any decision regarding the Rule 60(b) motion could afford Eve no effective relief, as the order on the motion for relief was displaced by the ruling finalizing the original parental rights action and resolving the motion to modify. Thus, the Rule 60(b) issue is moot.[4] *See In re Janna Lynn M.*, 2002 ME 45, ¶¶ 11-12, 793 A.2d 506.

---

[4] In addition, if we were to address the court's earlier order, we would find no abuse of discretion or error of law in the court's determination that Cynthia's agreement to the November 2010 order had been

[¶18] Eve also argues that the trial court erred and abused its discretion in determining child support and rights of contact for her in the omnibus order.

A.    Child Support

[¶19] Eve asserts that the trial court erred when it imputed to her an earning capacity of $62,061, based on her earnings in the previous ten years. Instead, Eve argues, the court should have looked to her current sources of actual income. She argues that the child support award must be vacated and remanded because the trial court's finding that Eve was voluntarily underemployed was clear error.[5]

[¶20] "Gross income may include the difference between the amount a party is earning and that party's earning capacity when the party voluntarily becomes or remains unemployed or underemployed, if sufficient evidence is introduced concerning a party's current earning capacity." 19-A M.R.S. § 2001(5)(D) (2013). "The determination of whether a party is voluntarily underemployed is a question of fact that we review for clear error." *Carolan v. Bell*, 2007 ME 39, ¶ 19, 916 A.2d 945. If a parent is voluntarily underemployed, the court's decision to impute income or apply the parent's earning capacity, rather than use his or her

---

made under duress and that Cynthia had not committed fraud upon the court by agreeing to the November 2010 judgment and later requesting relief from it.

[5] Eve also argues that the trial court failed to consider her rental income in its calculation of her gross income. *See Coppola v. Coppola*, 2007 ME 147, ¶¶ 10-11, 938 A.2d 786. However, unlike in *Coppola*, it is the child support obligor who challenges the award, not the obligee. *See id.* ¶¶ 5, 7. Here, any error by the trial court in failing to include Eve's rental income in her gross income would result in a higher obligation, meaning the error would be harmless to Eve. *See* M.R. Civ. P. 61.

current income, is discretionary. *Id.* "Findings are clearly erroneous if there is no competent evidence in the record to support [them]." *Id.* ¶ 12 (alteration in original).

[¶21]  The court heard evidence of the following facts at the omnibus hearing: (1) Eve has a B.A. in sociology and/or anthropology; (2) she worked as an insurance adjuster for about twenty years; (3) she made approximately $62,061[6] per year at the job that she held for about ten years before she abruptly quit that job in February 2010 when she took the child to Greece; (4) when she returned to Maine, Eve sought no employment in the insurance industry after approaching her former employer about reemployment; and (5) Eve started a cleaning business and estimated that she would earn $15,000 in 2013.  Thus, there is competent evidence to support the court's finding that Eve was voluntarily underemployed, and Eve has not demonstrated that the trial court abused its discretion by imputing her earning capacity for her gross income.

B.    Rights of Contact

[¶22]    "The [trial] court, in making an award of parental rights and responsibilities with respect to a child, shall apply the standard of the best interest of the child," with a primary focus on "the safety and well-being of the child"

---

[6]  This figure was based on Eve's earnings in 2008, as reported on her 2008 federal tax return, which was offered as an exhibit at the omnibus hearing.  Eve's 2009 tax return showed that she earned even more money—$68,485—in 2009.

when deciding rights of contact. 19-A M.R.S. § 1653(3). In applying the best interest of the child standard, the trial court considers the factors enumerated in 19-A M.R.S. § 1653(3). We review "child custody decisions for a clear abuse of discretion or error of law." *Grenier v. Grenier*, 2006 ME 99, ¶ 20, 904 A.2d 403. "The ultimate determination of the weight to be given each [best interest] factor requires careful consideration by the court and is left to the sound discretion of the court." *Akers v. Akers*, 2012 ME 75, ¶ 3, 44 A.3d 311. "The court's decision regarding the best interests of the child is entitled to substantial deference and its findings will stand unless clearly erroneous." *Grenier*, 2006 ME 99, ¶ 20, 904 A.2d 403.

[¶23] The trial court's parental rights and responsibilities award is supported by its findings that (1) the animosity between the parties has been detrimental to the child's health; (2) Eve has continually attempted to "influence [the child] to dislike and/or distrust [Cynthia]"; (3) while the child has resided primarily with her, Cynthia has rebuilt their relationship; (4) the child has a bond with each parent, and each parent is capable of caring for him; (5) the child is more relaxed, behaviorally appropriate, and social now that he has been residing primarily with Cynthia during the week; and (6) primary residence with Cynthia will allow both parties to have a healthy relationship with the child, and primary residence with Eve would not allow that. These findings are supported by

competent evidence in the omnibus hearing record, and each finding is directed toward examining the child's best interest. *See* 19-A M.R.S. § 1653(3)(B), (D), (F), (G), (H), (N), (S). Therefore, the court did not err or abuse its discretion in its award of rights of contact, including unsupervised contact, to Eve.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Amy L. Fairfield, Esq., Fairfield & Associates, Lyman, for appellant Eve Sotiriou

Teresa M. Cloutier, Esq., Lambert Coffin, Portland, for appellee Cynthia Stacey-Sotiriou

**At oral argument:**

Jeanette M. Durham, Esq., Fairfield & Associates, Lyman, for appellant Eve Sotiriou

Teresa M. Cloutier, Esq., for appellee Cynthia Stacey-Sotiriou

Lewiston District Court docket number FM-2009-575
FOR CLERK REFERENCE ONLY